IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

MELISSA A. D.,

                Plaintiff,

        v.                        Civil Action No.
                                    3:20-CV-0115 (DEP)

COMMISSIONER OF SOCIAL
  SECURITY,

                Defendant.


_____

<u>APPEARANCES</u>:                        <u>OF COUNSEL</u>:

<u>FOR PLAINTIFF</u>

BINDER, BINDER LAW FIRM       CHARLES E. BINDER**,** ESQ.
485 Madison Avenue, Suite 501    JOHN J. MORAN, ESQ.
New York, NY 10022

<u>FOR DEFENDANT</u>

SOCIAL SECURITY ADMIN.        MOLLY CARTER, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>ORDER</u>

      Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. §§ 405(g) and 1383(3)(c), are cross-motions for judgment on the pleadings.[1]  Oral argument was heard in connection with those motions on April 21, 2021, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1)     Defendant's motion for judgment on the pleadings is GRANTED.

---

[1]     This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2)    The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3)    The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

_____
David E. Peebles
U.S. Magistrate Judge

Dated:    April 27, 2021
          Syracuse, NY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

MELISSA A. D.,                          )
                                        )
                                        )
            Plaintiff,                  ) CASE NO. 20-CV-115
                                        )
   vs.                                  )
                                        )
COMMISSIONER OF SOCIAL SECURITY,        )
                                        )
            Defendant.                  )
_____ )

**TRANSCRIPT OF PROCEEDINGS**
**BEFORE THE HON. DAVID E. PEEBLES**
**WEDNESDAY, APRIL 21, 2021**
**SYRACUSE, NEW YORK**

**FOR THE PLAINTIFF:**
   BINDER & BINDER
   By:  JOHN J. MORAN, ESQ.
   485 Madison Avenue, Suite 501
   New York, New York 10022

**FOR THE DEFENDANT:**
   SOCIAL SECURITY ADMINISTRATION
   By:  MOLLY CARTER, ESQ.
   625 JFK Building, 15 New Sudbury Street
   Boston, Massachusetts 02203

*JACQUELINE STROFFOLINO, RPR*
*UNITED STATES DISTRICT COURT - NDNY*

**20-CV-115**

1                        (Teleconference.)

2              THE COURT:  Plaintiff has commenced this proceeding

3      pursuant to 42 United States Code Sections 405(g) and 1383(c)(3)

4      to challenge an adverse determination by the Commissioner of

5      Social Security finding that plaintiff was not disabled at the

6      relevant times and therefore is ineligible for the benefits that

7      she sought.

8              The background is as follows.  Plaintiff was born in

9      April of 1973.  She is currently 48 years old.  She was

10     approximately just about a couple weeks short of 33 years of age

11     at the time of the alleged onset of her disability on March 15,

12     2006.  Plaintiff stands five foot, three inches in height and

13     has weighed between 140 and 220 pounds.  She reported

14     experiencing a 100-pound weigh gain attributable to the

15     medications that she has been prescribed.

16             Plaintiff has four children.  In April 2014, that

17     included a 22-year-old son, 16-year-old daughter, 7-year-old

18     daughter, and 4-year-old son.  She lived at the time of the

19     hearing in this matter in Johnson City with a fiancé, three of

20     her children, and another man who helps.

21             She has completed ninth grade in school and achieved a

22     GED.  She was in regular classes at the time of attending

23     school.  She also has a little more than one year of college

24     education.  She went online to take college courses in 2017 or

25     tried to.  She is right-handed, and she drives.

**20-CV-115**

1        Plaintiff stopped working in 2005 or 2006.  The

2   evidence is equivocal as to why.  At page 52 at the hearing, she

3   testified that she was laid off due to attendance issues, but in

4   her function report 273, she stated that she was laid off due to

5   lack of work.  When she worked, she was a certified solderer, a

6   cashier, and a waitress.  She was fired from her waitress

7   position after getting into an argument with her manager.

8        Plaintiff suffers from various mental impairments.

9   They have been variously diagnosed as anxiety, anxiety disorder

10  with agoraphobia, post traumatic stress disorder or PTSD,

11  manic-depressive psychosis, bipolar disorder, panic disorder,

12  personality disorder, and loss of interests.

13       Plaintiff has a history of sexual and physical abuse,

14  of being the victim of those.  She also has a history of alcohol

15  and polysubstance abuse requiring treatment.  Plaintiff was

16  hospitalized in 2006 psychiatrically due to depression and

17  suicidal ideation.  That appears at 374 of the administrative

18  transcript.  Plaintiff is particularly afraid of open spaces

19  including crossing parking lots.

20       Physically, plaintiff suffers from obesity, a back

21  issue, and she had a broken bone in her ankle or foot in 2013.

22  I do not understand, however, her claim to be related to

23  limitations associated with her physical condition.

24       Plaintiff has treated with Nurse Practitioner Ryan

25  Little of United Health Services since November of 2008.  In

4

**20-CV-115**

1   2010, it was reported at 501 she was seeing Nurse Practitioner

2   Little monthly.  In 2018, however, it appears that she was only

3   seeing Nurse Practitioner Little between four, every four and

4   six months.  That appears at 835 and 842 of the administrative

5   transcript.

6           Plaintiff also treated since March of 2013 with

7   Dr. Arun, A-r-u-n, Shah, S-h-a-h, who she sees every three

8   months.  In 2006, she also saw professionals at Tricounty Human

9   Services Center on seven occasions.

10          In terms of medication, plaintiff over time has been

11  prescribed Lexapro, Buspar, Zoloft, Seroquel, Geodon, Valium,

12  Paxil, Lamictal, Trazodone, Vistaril, Celexa, omeprazole,

13  diazepam, paroxetine, l-a-m-o-t-r-i-g-i-n-e.  She testifies that

14  she experiences side effects from her medications including

15  weight gain and fatigue.

16          Plaintiff has a fairly wide range of activities of

17  daily living including caring for her children.  She can dress,

18  bathe, groom.  She does dishes.  She cleans.  She cooks.  She

19  does laundry.  She paints rooms in the interior of her house.

20  She shops approximately one time per month, often with help.

21  She drives.  She can take public transportation.  She watches

22  television, and she reads.

23          This case has a fairly tortured and extensive

24  procedural history dating back to June 11, 2010, when plaintiff

25  applied for Title 2 and Title 16 benefits under the Social

**20-CV-115**

1  Security Act alleging onset date of March 15, 2006.  Her claim

2  at page 273 was that she is disabled based upon her bipolar

3  disorder and agoraphobia, also panic attacks and anxiety

4  disorder.

5          A hearing was conducted on November 8, 2011, by

6  Administrative Law Judge Marie Greener.  Judge Greener issued an

7  adverse decision on December 15, 2011.  On July 5, 2013, the

8  Social Security Administration Appeals Council remanded the

9  matter on the basis that there was an insufficient explanation

10  for rejecting the opinions of Nurse Practitioner Little and

11  cosigned by Dr. Jimenez, and also there was a lack of testimony

12  from a vocational exert with opinions as to job base erosion.

13          A subsequent hearing was conducted by ALJ Greener on

14  April 17, 2014.  Judge Greener issued another adverse

15  determination July 22, 2014.  On December 6, 2015, the Appeals

16  Council denied review of that decision.

17          However, on September 29, 2017, United States District

18  Court for the Middle District of Pennsylvania, Judge William J.

19  Nealon, N-e-a-l-o-n, vacated the commissioner's determination

20  and remanded the matter claiming there was insufficient

21  discussion of why there was no limitation in the residual

22  functional capacity finding involving attention, concentration,

23  and attendance.  So the Social Security Administration Appeals

24  Council issued a subsequent decision on April 27, 2018,

25  remanding the matter and directing it be assigned to a new

6

**20-CV-115**

1    administrative law judge.

2           The matter was subsequently assigned to Administrative

3    Law Judge Elizabeth Koennecke, K-o-e-n-n-e-c-k-e.  Judge

4    Koennecke on May 4, 2018, in response to the District Court's

5    concern, requested updated information from plaintiff at 762 to

6    763.  There was no further clarification or material submitted

7    however.

8           Judge Koennecke conducted a hearing on January 9,

9    2019, and subsequently issued an unfavorable decision on

10   February 13, 2019.  That became a final determination of the

11   agency on December 2, 2019, when the Social Security

12   Administration Appeals Council denied plaintiff's application

13   for review.  This actions was commenced February 3, 2020, and is

14   timely.

15          In her decision, Judge Koennecke applied the familiar

16   five-step sequential test for determining disability.  She first

17   found that plaintiff was insured through December 31, 2010.

18          At step 1, she concluded plaintiff had not engaged in

19   substantial gainful activity since March 15, 2006.

20          At step 2, ALJ Koennecke concluded that plaintiff does

21   suffer from severe impairments that impose more than minimal

22   limitations on her ability to perform basic work functions,

23   stating that they are, quote, "all mental impairments as

24   variously characterized."

25          At step 3, ALJ Koennecke concluded that plaintiff's

**20-CV-115**

1    conditions do not meet or medically equal any of the listed

2    presumptively disabling conditions set forth in the

3    commissioner's regulations, specifically considering listings

4    12.04, 12.06, 12.08, and 12.15.

5             ALJ Koennecke next concluded that plaintiff maintains

6    the residual functional capacity or RFC to perform a full range

7    of work at all exertional levels with several nonexertional

8    limitations addressing plaintiff's mental limitations.

9             The administrative law judge at step 4 concluded that

10   based on the residual functional capacity, the plaintiff was not

11   capable of performing her past relevant work as a wire worker,

12   both as generally and actually performed at the time.  At step

13   5, ALJ Koennecke concluded -- I'm sorry.  At step 4, the

14   administrative law judge concluded that plaintiff is capable of

15   performing her past relevant work as a wire worker both as

16   generally and actually performed.

17            As an alternative basis for finding no disability, the

18   ALJ proceeded to step 5 and concluded based on the testimony of

19   a vocational expert that plaintiff could also perform other

20   available work in the national economy, representative positions

21   being warehouse worker, laundry laborer, and evening industrial

22   cleaner, and that plaintiff is therefore not disabled at the

23   relevant times.

24            The Court's function in this case of course is limited

25   and extremely deferential.  The Court must determine whether the

**20-CV-115**

1   correct legal principles were applied and the resulting

2   determination is supported by substantial evidence, which is

3   defined as such relevant evidence as a reasonable factfinder

4   would conclude sufficient to support a finding.

5           The Second Circuit addressed the standard in Brault,

6   B-r-a-u-l-t, versus Social Security Administration Commissioner,

7   reported at 683 F.3d 443 from 2012, noting that the standard is

8   highly deferential, more stringent than even the clearly

9   erroneous standard that courts and lawyers are familiar with.

10  Notably, the Court stated that the substantial evidence standard

11  means that once an ALJ finds a fact, that fact can be rejected

12  only if a reasonable factfinder would have to conclude

13  otherwise.

14          The plaintiff in this case has two basic contentions.

15  In the first, she claims that the RFC finding is unsupported and

16  resulted from improper weighing of medical opinion evidence.

17  Subsumed within that argument is the claim that the treating

18  source rule was violated when Dr. Shah's opinion was not

19  accorded -- opinions, I should say, were not accorded

20  controlling weight.

21          The second argument raised by the plaintiff concerns

22  the evaluation of plaintiff 's subjective complaints.  The

23  argument is that her complaints were improperly weighed and

24  rejected.

25          Of course, the first order of business for an

**20-CV-115**

1   administrative law judge such as ALJ Koennecke was to determine

2   plaintiff's RFC.  A claimant's RFC represents a finding of the

3   range of tasks she is capable of performing notwithstanding the

4   impairments at issue.  An RFC determination is informed by

5   consideration of all of the relevant medical and other evidence.

6   20 CFR Sections 404.1545(a)(3) and 416.945(a)(3).  The RFC

7   finding must include assessment of both a plaintiff's exertional

8   capabilities as well as nonexertional limitations including

9   those resulting from mental impairments.  And of course, an

10  ALJ's RFC determination, like all of the parts of the decision,

11  must be supported by substantial evidence.

12          In this case, there is considerable opinion evidence

13  in the record including two opinions reported at 12F and 22F of

14  the administrative transcript from Dr. Arun Shah, a treating

15  psychiatrist.

16          Dr. Shah on March -- I'm sorry, May 13, 2013,

17  evaluated the plaintiff and concluded that plaintiff is markedly

18  limited in many areas including the ability to maintain

19  attention and concentration for extended periods, the ability to

20  perform activities within a schedule and so forth, the ability

21  to work in coordination or proximity to others without being

22  unduly distracted, the ability to complete a normal workweek

23  without interruptions, the ability to interact appropriately

24  with the general public, the ability to get along with

25  coworkers, and the ability to travel to unfamiliar places or use

**20-CV-115**

1   public transportation.  That opinion is at 514 through 521 of

2   the administrative transcript.

3           A second opinion from Dr. Shah was given on March 28,

4   2014, and contains similar limitations in a checkbox format with

5   many marked limitations.

6           Dr. Shah also issued a letter on June 11, 2013, that

7   appears at 535 of the administrative transcript, stating that

8   the plaintiff remains disabled.  Of course, that doesn't include

9   a function by function analysis and speaks to a matter that is

10  reserved to the commissioner.

11          Dr. Shah is clearly a treating source as recognized by

12  the administrative law judge.  As a treating source, his

13  opinions ordinarily would be entitled to considerable deference

14  provided that his opinions are supported by medically acceptable

15  clinical and laboratory diagnostic techniques and are not

16  inconsistent with other substantial evidence.  Veino, V-e-i-n-o,

17  versus Barnhart, 312 F.3d 578, 588, Second Circuit 2002.

18          Such opinions are not controlling, however, if they

19  are contrary to other substantial evidence in the record,

20  including the opinions of other medical experts.  Veino at 312

21  F.3d at 588.  Where there are conflicts in the form of

22  contradictory medical evidence, their resolution of course is

23  properly entrusted to the commissioner.

24          If controlling weight is not given to a treating

25  source's opinion, the ALJ must apply several factors that are

**20-CV-115**

1   specified in the regulations, 20 CFR Sections 404.1527 and

2   416.927, the so-called Burgess factors, and the ALJ must provide

3   reasons for the rejection.

4          Of course, under Estrella versus Berryhill, 925 F.3d

5   90 from Second Circuit 2019, in recognition of the fact that in

6   most instances, the ALJ does not specifically list the Burgess

7   factors, the Second Circuit has noted that the treating source

8   rule is not violated if a searching review of the record reveals

9   that the factors have been properly considered.

10         In this case, the administrative law judge discussed

11  Dr. Shah's opinions at pages 595 to 596 and again at 599 of the

12  administrative transcript.  She concluded that the opinions were

13  not supported by treatment records.  She also noted that they

14  were not supported by the cited global assessment on function or

15  GAF scores recorded.  Dr. Shah at page 514 listed the current

16  GAF at 60 to 65, and although it may be an error, an obvious

17  error, stated that the lowest GAF for the past year for the

18  plaintiff was 75.  At 555, the current GAF was listed at 60 to

19  65, and the lowest GAF in the past year was listed as 60.

20         Under the standard set out in DSM-4 -- and I

21  understand that that standard no longer applies, but it did at

22  the time of Dr. Shah's opinions -- a GAF of 61 to 70 represents

23  some mild symptoms or some difficulty in social, occupational,

24  or school functioning, but generally functioning pretty well,

25  has some meaningful interpersonal relationships.  60, which is

**20-CV-115**

1    at the high end of the 51 to 60 category, reflects moderate

2    symptoms, more moderate difficulty in social, occupation, or

3    school functioning.

4            The consideration of GAF scores is proper as one

5    factor.  It is certainly not the be all and end all, and in many

6    respects, represents only a snapshot of plaintiff's functioning

7    at any given time.  But the Court in Leonard versus Commissioner

8    of Social Security, 2016 Westlaw 3511780 from the Northern

9    District of New York, May 19, 2016, approved of consideration of

10   GAF score -- in that case, a score of 60 -- as inconsistent with

11   the conclusion of serious limitations in maintaining attention,

12   working without distraction, and adhering to standards of

13   neatness and cleanliness.  The Second Circuit affirmed that case

14   at 2016 Westlaw 3512219 and noted in note 2 the relevance on a

15   limited basis of GAF score.

16           In this case, this is not a situation where a

17   treatment note is cherry-picked and it has a GAF score of a

18   certain figure.  This is a GAF score recorded by the very person

19   that is issuing the opinions with the significant limitations.

20   And moreover, it doesn't represent just a single snapshot

21   because it reports the lowest GAF score in the past year in both

22   instances.  I think the ALJ properly considered those as a

23   factor in weighing Dr. Shah's opinions.

24           The ALJ also noted the lack of deficits in attention

25   and concentration reflected in treatment notes, the fact that it

**20-CV-115**

1  was speculative when it comes to absences, and the significant

2  gaps in treatment.  There are essentially four gaps in

3  treatment:  October 2011 to March 2013, July 2014 to November

4  2015, November 2015 to July 2016, and July 2016 to March of

5  2017, a proper consideration.

6        The ALJ also noted that Dr. Shah found a marked

7  limitation in the plaintiff's ability to perform -- to take

8  public transportation, and yet she reported to one of the

9  consultative examiners that she is -- and she testified she can

10  take public transportation.  In my view, the Burgess factors

11  were properly considered.  I am not able to say that a searching

12  review of the record reflects a violation of the treating source

13  rule in consideration of Dr. Shah's opinions.

14        The record also contains opinions from Nurse

15  Practitioner Ryan Little.  In 2011, November 2011, at page 501

16  to page 508, a checkbox form reflects that there are marked

17  limitation in several areas including the ability to maintain

18  attention and concentration for extended periods, the ability to

19  perform activities within a schedule and maintain regular

20  attendance, the ability to make simple work-related decisions,

21  the ability to accept instructions and respond appropriately to

22  criticism, the ability to get along with coworkers or peers, the

23  ability to respond appropriately to changes in work setting, and

24  the ability to be aware of normal hazards.

25        Nurse Practitioner Little also indicated that the

14

**20-CV-115**

1    plaintiff is incapable of even a low stress position and would

2    be likely absent more than three times a month.  At pages 835

3    through 840, Nurse Practitioner Little provides an opinion from

4    February 28, 2018, indicating similarly marked limitations in

5    various areas and a likelihood that plaintiff would be absent

6    two to three times per month.

7            On December 13, 2018, appearing at 842 to 847, Nurse

8    Practitioner Little provided yet another assessment in a

9    checkbox format, similarly finding marked limitations in many

10   areas and a finding that plaintiff would be absent more than

11   three times per month.

12           Nurse Practitioner Little signed or authored a "to

13   whom it may concern" letter on July 13, 2017, that is cosigned

14   by Dr. Domingo Jimenez.  There's no indication in the record

15   that Dr. Jimenez ever treated the plaintiff.  It references

16   anxiety disorder with agoraphobia and social anxiety.  It finds

17   marked limitations in several areas.

18           The record further contains some conclusory opinions

19   from Nurse Practitioner Little.  May 14, 2013, she is currently

20   disabled from her mental health issues, a matter reserved to the

21   commissioner.  On May 26, 2011, at 531, plaintiff has been

22   unable to work from 2009 until the present.  Again, no function

23   by function limitations and on a matter reserved for the

24   commissioner, and once again, inability to work doesn't -- is

25   not supported by any functional limitations cited.  And

**20-CV-115**

1    March 10, 2014, 554, similarly plaintiff is unable to work.

2         The opinions of Nurse Practitioner Little are

3    comprehensively discussed by Administrative Law Judge Koennecke

4    as 596, 597 and again at 598 to 599, not given significant

5    weight.  Of course, under the regulations that were in effect at

6    the time, this action involving an application that was made

7    prior to March 2017, Little is not an acceptable medical source,

8    and once again, there's no evidence that Dr. Jimenez ever

9    treated the plaintiff.

10         The ALJ properly rejected the nurse practitioner's

11   opinions because the treatment notes do not support.  There are

12   many visits without any findings.  There's lack of evidence of

13   deficits in plaintiff's ability to concentrate and attention.

14   The activities of daily living were properly considered when

15   rejecting those opinions.  Frankly, a modest number of

16   relatively benign transcript notes with reference to any anxiety

17   and depression.

18         I do acknowledge, as plaintiff has argued, that there

19   are some treatment notes that reflect modest anxiety or

20   depression levels, but that doesn't undermine the administrative

21   law judge's decision.  The question is not whether substantial

22   evidence would support a finding of no disability or a finding

23   of disability.  The issue is whether substantial evidence

24   supports the finding of no disability.  I find no error in

25   refusing to accord greater weight to the opinions of Nurse

**20-CV-115**

1   Practitioner Little.

2           There are also some consultative examination results

3   from examining and nonexamining consultants in the record.  All

4   were considered by Administrative Law Judge Koennecke.

5   Dr. Sarah Long examined the plaintiff and issued an opinion on

6   July 23, 2010.  She opined that the plaintiff is able to follow

7   and understand simple directions and instructions and to perform

8   simple tasks independently.  She is able to maintain attention

9   and concentration and is able to maintain a regular schedule.

10  She appears able to learn new tasks, perform complex tasks

11  independently, make appropriate decisions, relate adequately to

12  others, and is capable of adequate stress management.  Her

13  opinions are at 374 to 378 in the record.  They are discussed at

14  594 and given some weight.

15          It is true that a consultative examiner's opinion can

16  provide substantial evidence to an RFC finding if it is

17  supported.  Dr. Long's opinions are well supported by the exam

18  findings and are consistent with a residual functional capacity

19  finding.

20          There is a statement that plaintiff focuses on in the

21  next paragraph on page 376.  Quote, "The results of the present

22  evaluation appear to be consistent with psychiatric problems,

23  comma, which may, comma, at times, comma, interfere with her

24  about to function on a regular basis," close quote.  However,

25  that statement is vague, and the medical source statement that I

**20-CV-115**

1    just summarized is more specific when it comes to maintaining a

2    schedule, for example, and concentration, and once again is

3    supportive of the residual functional capacity finding.

4         The record also contains the opinion of Dr. Cheryl

5    Loomis dated August 27, 2013, appearing at 523 to 527 of the

6    administrative transcript.  It is Dr. Loomis's opinion that

7    there are some moderate impairments of the plaintiff and a

8    marked impairment in her ability to maintain attention and

9    concentration, perform complex tasks independently or under

10   supervision, make appropriate decisions, relate adequately with

11   others, and appropriately deal with stress.  The opinion was

12   discussed at pages 594 to 595 and given some weight.

13        As the administrative law judge noted, however, some

14   of the conclusions including the marked impairment and the

15   ability to maintain attention and concentration are inconsistent

16   with the exam findings since at page 525, she assessed

17   plaintiff's ability in the area of concentration and attendance

18   as moderately impaired and spelled that out.

19        It also indicates in Administrative Law Judge

20   Koennecke's consideration of Dr. Loomis's opinion, which she

21   gave some weight, that it's based quite a bit on plaintiff's

22   subjective statements, and in any event, is generally consistent

23   with some exceptions to -- with the RFC finding.

24        There is also the opinion, two opinions of Dr. T.

25   Harding, a nonexamining state agency consultant from

**20-CV-115**

1    September 10, 2010.  In the first Exhibit 3F, he considers.  He

2    applies the psychiatric review technique, finds the existence of

3    some impairments, but finds that they do not meet the B or C

4    criteria of the listings, finding a moderate limitation and

5    restriction in activities of daily living, a moderate

6    restriction in maintaining social functioning, and a moderate

7    limitation to maintaining concentration, persistence, or pace at

8    page 429.

9            Assessing plaintiff's residual functional capacity

10   from a mental standpoint, Dr. Harding finds some moderate

11   limitations at page 433 to 435, but summarizes as follows:  CE

12   examiner opines that claimant is able to perform simple tasks

13   independently and maintain attention and concentration, is able

14   to keep a regular schedule and learn new tasks and perform

15   complex tasks independently and make appropriate decisions and

16   relate adequately with others and is capable of dealing with

17   stress.  With respect to cognitive functioning, this opinion is

18   consistent with the MER, the medical evidence in the file, and

19   is adopted.  And based on the medical evidence, quote, "Claimant

20   retains the capacity for simple and semiskilled work," close

21   quote.

22           That opinion of course is consistent with the residual

23   functional capacity finding.  It was discussed at pages 597 to

24   598 and given some weight.  I find no error in conclusion in the

25   weighing of the various medical opinions.  Under Veino, it is

**20-CV-115**

1  for the administrative law judge to weigh conflicting opinions,

2  and it is plaintiff's burden to show greater limitations than

3  set forth in the residual functional capacity, and I find that

4  that burden is not carried.

5          Turning to the second argument, what we used to refer

6  to as credibility, the evaluation of plaintiff's subjective

7  complaints.  Naturally an ALJ must take into account a

8  plaintiff's subjective complaints in rendering the five-step

9  disability analysis.  20 CFR Sections 404.1529 and 416.929.

10          The ALJ is not, comma, however, required to blindly

11  accept the subjective testimony of a claimant.  It is up to the

12  ALJ instead in his or her discretion to weigh the credibility of

13  the claimant's testimony in light of the other evidence in the

14  record.  Genier, G-e-n-i-e-r, versus Astrue, 606 F.3d 46, Second

15  Circuit 2010.

16          In this case, the administrative law judge recounted

17  plaintiff's claims at 591 and 592 and applied the required

18  two-step analysis under Social Security Ruling or SSR 16-3P.

19  The administrative law judge first concluded that plaintiff's

20  medically determinable mental impairments could reasonably cause

21  the symptoms reported, but found that plaintiff's testimony

22  concerning those symptoms was not consistent with other medical

23  evidence, explaining her ruling from 592 to 600, pointing out

24  among other things that there was a lack of support from the

25  clinical findings for the reported symptoms, the clinical

**20-CV-115**

1   findings being relatively benign.

2          She also cited significant and multiple gaps in

3   treatment, proper considerations under Landis P. versus

4   Commissioner of Social Security, 2020 Westlaw 2770434 from the

5   Northern District of New York 2020; as well as Camille versus

6   Colvin, 652 Federal Appendix 25 from the Second Circuit 2016.

7          It is true that in some instances, there may be

8   evidence that gaps in treatment have been caused by a mental

9   condition, but there is little support, if any, in the record

10  that this plaintiff could not, for example, retain a

11  psychiatrist when recommended by Nurse Practitioner Little and

12  could not attend treatment during those gap periods.

13         I note that plaintiff alleges an onset date of March

14  of 2006, and yet her first significant treatment for her mental

15  condition did not take place until November 2008 when she first

16  consulted with Nurse Practitioner Little, and at that time or

17  shortly thereafter, she declined Nurse Practitioner Little's

18  recommendation to seek specialized care.

19         The reported symptoms are also inconsistent with the

20  opinions of the consultative examiners and plaintiff's

21  activities of daily living.  It was noted that plaintiff has a

22  poor work history, and the plaintiff was apparently laid off in

23  2005 due to lack of work rather than her mental condition.

24  These are all permissible factors.

25         Administrative Law Judge Koennecke also based her

**20-CV-115**

1    decision in part on observations of the plaintiff during the

2    hearing in this matter.  Simply put, I find that plaintiff has

3    failed to carry her burden of demonstrating that no reasonable

4    factfinder, or put another way, that a reasonable factfinder

5    would have to find that plaintiff's complaints were credible.

6              So in conclusion, I reject plaintiff's arguments.  I

7    find that the determination of the administrative law judge was

8    supported by substantial evidence and resulted from the

9    application of proper legal principles.  I will therefore grant

10   judgment on the pleadings to the defendant and order dismissal

11   of plaintiff's complaint.

12             Thank you both for excellent presentations.  I enjoyed

13   working with you.  Please stay safe.

14                       (The matter adjourned at 11:59 a.m.)

15

16

17

18

19

20

21

22

23

24

25

**20-CV-115**

1                  CERTIFICATION OF OFFICIAL REPORTER

2

3

4          I, JACQUELINE STROFFOLINO, RPR, Official Court Reporter,

5    in and for the United States District Court for the Northern

6    District of New York, do hereby certify that pursuant to Section

7    753, Title 28, United States Code, that the foregoing is a true

8    and correct transcript of the stenographically reported

9    proceedings held in the above-entitled matter and that the

10   transcript page format is in conformance with the regulations of

11   the Judicial Conference of the United States.

12

13          Dated this 22nd day of April, 2021.

14

15          **/s/ JACQUELINE STROFFOLINO**

16          JACQUELINE STROFFOLINO, RPR

17          FEDERAL OFFICIAL COURT REPORTER

18

19

20

21

22

23

24

25